IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32195-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LUCIO CONTRERAS RODRIGUEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — The Grant County juvenile court adjudicated Lucio Contreras

Rodriguez guilty of possession of a stolen vehicle and imposed six months' supervision

to begin on January 13, 2014. He appeals, assigning error to (1) the sufficiency of

evidence to establish that he knew the vehicle was stolen, (2) conditions of community

supervision that he contends exceeded the court's authority, and (3) a scrivener's error in

the order on adjudication and disposition.

The juvenile court's findings are supported by substantial evidence and support its

conclusion that Mr. Contreras Rodriguez violated RCW 9A.56.068. Because he long ago

completed his term of community supervision, his challenge to the conditions of

community supervision is moot. The State concedes that the adjudication and disposition

includes a scrivener's error. We therefore affirm the disposition but remand for the sole purpose of correcting the scrivener's error.

## FACTS AND PROCEDURAL BACKGROUND

At about 2:30 a.m. on April 7, 2013, Quincy police officer Erik Bakke was on patrol when a man ran up to his car, said something in Spanish about a car; gestured by slamming his fist into his other hand; and pointed in the direction of a nearby road. Officer Bakke drove down that road and encountered a car with flames and smoke coming from the engine compartment. It was later determined that the car, a 1993 Honda Civic, had run through nearly 30 feet of chain link fencing, shearing off posts along the way, before hitting the side of a large conex box (a type of shipping container). The force of the collision had pushed the engine compartment one or two feet into the interior of the car, between the driver's and passenger's seats.

Officer Bakke found 16-year-old Lucio Contreras Rodriguez lying on the ground 10 or 15 feet from the Civic on the driver's side. He had sustained injuries to the right side of his body and was unable to walk. Alejandro Hernandez was found on the ground near the passenger side of the car. He had suffered injuries to the left side of his body, and he, too, was unable to move. With help from standers-by, Officer Bakke was able to move both men a safe distance from the car before its cabin combusted into flames.

While awaiting transport to the hospital, Officer Bakke asked Mr. Contreras Rodriguez what had happened. For the most part, Mr. Contreras Rodriguez's response

2

was unintelligible, but Officer Bakke was able to make out the words "lost control."

Report of Proceedings (RP) at 43-44.

Paramedics arrived and took Mr. Contreras Rodriguez and Mr. Hernandez to

Quincy Valley Hospital, where Officer Bakke spoke to Mr. Contreras Rodriguez further.

While at the hospital, Officer Bakke asked Mr. Contreras Rodriguez who had been

driving the car. Mr. Contreras Rodriguez responded that he did not know.

At around 5:00 a.m. that morning, Jesus Comacho discovered that his 1993 Honda

Civic, which had been parked on the side of his home in Quincy, was missing. He called

police to report the theft. It was soon determined that it was Mr. Camacho's Civic that

had been involved in the early morning collision. Mr. Camacho had last seen the car the

night before. He had not given Mr. Contreras Rodriguez permission to use it.

Although Mr. Contreras Rodriguez was originally charged with several crimes, the

information had been amended by the time of the adjudication to include only its count

two: possession of a stolen vehicle in violation of RCW 9A.56.068.

At the conclusion of a one-day adjudicatory hearing, the juvenile court requested

additional briefing on the "knowledge" element of possession of a stolen vehicle. After

receiving and reviewing the parties' briefs, the court found Mr. Contreras Rodriguez

guilty. Its disposition order imposed local sanctions of 5 days of detention, 20 hours of

community service, 6 months of community supervision, and fees and costs. The

community supervision was to begin on January 13, 2014. Mr. Contreras Rodriguez timely appealed.

Several months into the community supervision, Mr. Contreras Rodriguez violated the terms of his supervision and a bench warrant was issued on May 7, 2014. Mr. Contreras Rodriguez's probation was stayed pending his probation violation hearing, which took place on June 27, 2014. According to the State's appeal brief filed on October 10, 2014, community supervision of Mr. Contreras Rodriguez concluded on August 23, 2014. Br. of Resp't at 11.

## ANALYSIS

Mr. Contreras Rodriguez makes three assignments of error that we address in turn.

### I. Sufficiency of the evidence

Mr. Contreras Rodriguez first challenges the sufficiency of evidence to establish possession of a stolen motor vehicle, arguing that the State produced no evidence that he knew the Civic was stolen. While RCW 9A.56.068 provides only that "[a] person is guilty of possession of a stolen vehicle if he or she possess [possesses] a stolen motor vehicle," the State must prove that a defendant not only possessed a stolen vehicle, but also that he had knowledge the vehicle was stolen. *State v. Hayes*, 164 Wn. App. 459, 479-80, 262 P.3d 538 (2011), *aff'd*, 182 Wn.2d 556, 342 P.3d 1144 (2015).[1]

---

[1] While the mens rea element is not expressly codified in RCW 9A.56.068, courts have held that RCW 9A.56.068 implicitly incorporates chapter 9A.56 RCW's definition

4

Evidence is sufficient to support an adjudication of guilt in a juvenile proceeding if any rational trier of fact, viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime beyond a reasonable doubt. *State v. Avila*, 102 Wn. App. 882, 895-96, 10 P.3d 486 (2000) (citing *State v. Echeverria*, 85 Wn. App. 777, 782, 934 P.2d 1214 (1997)). Juvenile court rules require the court to enter written findings and conclusions in a case that is appealed. JuCR 7.11(d). This court then reviews the juvenile court's findings to determine whether they are supported by substantial evidence, which is a sufficient quantity of evidence to persuade a fair-minded, rational person of the truth of the allegation. *Avila*, 102 Wn. App. at 896 (citing *Echeverria*, 85 Wn. App. at 783).

Mere possession of recently stolen property is insufficient to establish that the possessor had knowledge the property was stolen; however, possession coupled with slight corroborative evidence tending to show guilt is sufficient to prove knowledge. *State v. Couet*, 71 Wn.2d 773, 775, 430 P.2d 974 (1967); *State v. Womble*, 93 Wn. App. 599, 604, 969 P.2d 1097 (1999). "Guilty knowledge is an element . . . which can rarely

---

of "possessing stolen property." *See Hayes*, 164 Wn. App. at 479-80; *State v. Polo*, 169 Wn. App. 750, 764, 282 P.3d 1116 (2012); 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 77.21 cmt. at 178 (3d ed. 2008). "'Possessing stolen property' means knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto." RCW 9A.56.140(1).

5

be proven by direct and positive testimony. Ordinarily it must be found by inference from all the facts and circumstances." *State v. Salzman*, 186 Wash. 44, 47, 56 P.2d 1005 (1936).

Absence of a plausible explanation is a corroborating circumstance justifying an inference of knowledge from the possession of recently stolen property. *Womble*, 93 Wn. App. at 604 (citing *State v. Ford*, 33 Wn. App. 788, 790, 658 P.2d 36 (1983)); *and see State v. Hudson*, 56 Wn. App. 490, 495, 784 P.2d 533 (1990) ("The absence of any explanation for [defendant's] use of what appears to have been a recently stolen automobile (the Maxima had less than 1,500 miles on it) and his flight provide ample evidence from which to infer guilty knowledge."); *Ford*, 33 Wn. App. at 790 ("[The defendant] was apprehended in a car taken either that day or the day prior. Although he admitted he did not know who owned the car, he offered no explanation for his possession of it. From these facts, the trial court could infer that [the defendant] had knowledge that the car had been unlawfully taken.").

*Challenged findings of fact*

Mr. Contreras Rodriguez assigns error to only two findings of fact: findings 2.15 and 2.16. They state:

> 2.15    At the hospital, Contreras Rodriguez told Officer Bakke that he had not been driving the car and did not know who was driving.

> 2.16    The version of events Contreras Rodriguez told Officer Bakke, that he was not the driver of the car and he did not know who was

driving, was not plausible. This fact is based upon Contreras Rodriguez's location after the collision, Hernandez's location, their inability to walk without assistance due to their injuries, and that no other passengers were present.

Clerk's Papers (CP) at 58-59. Mr. Contreras Rodriguez points out that both findings incorrectly state that Mr. Contreras Rodriguez told police he had not been driving the car— yet he never affirmatively denied being the driver. He attributes the court's error to the State's post-hearing briefing, in which it incorrectly represented that Officer Bakke testified Mr. Contreras Rodriguez stated that he was not driving and that someone else was. Br. of Appellant at 8-9 & n.4.

Mr. Contreras Rodriguez is correct; the court's findings are in error on this score. Officer Bakke testified as follows at the adjudicatory hearing:

Q    What did you ask him?
A    I asked him what happened, and who was driving.
Q    Did he tell you who was driving?
A    No. He said he didn't know.
Q    Okay. *Did he tell that – whether he was driving or not?*
A    *No, he did not.*
Q    Okay. Let me clarify. *Did you ask the respondent specifically if he was driving the car?*
A    No.
Q    No.
A    No.
Q    What was the question that you asked him, regarding who was driving the car?
A    Can I review my report again?
       . . . .
Q    MR. JOHNSON: All right.
Q    Okay.
A    Okay. No, I – *I did not specifically ask him – if he was driving.*

7

> THE COURT: So, I think your question was what was the question that
>     you put to him–
> MR. JOHNSON: Yeah.
> THE WITNESS: I just asked him who was driving.
> THE COURT: And he said he didn't know.
> THE WITNESS: Right.
> THE COURT: Okay.

RP at 51-52 (emphasis added).

Surprisingly, the State persists on appeal in contending that "Officer Bakke testified that Contreras Rodriguez told him someone else was driving the car" and that "the trial court made a reasonable inference" because, among other things, "[Contreras Rodriguez] provided an implausible [statement as] to who was in fact driving the car." Br. of Resp't at 9-10. Mr. Contreras Rodriguez's answer that he "did not know" might imply that he was not the driver, but it also might imply that, for some reason, he has no recollection of the collision or events leading up to it. It does not imply *only* the former.

Mr. Contreras Rodriguez admits that his assignment of this error is "as a house-keeping matter." Br. of Appellant at 9. The truly critical issue on appeal is whether we view the unchallenged findings, including the finding that Mr. Contreras Rodriguez claimed not to know who was driving, as sufficient to support the juvenile court's conclusions.

*Challenged conclusions of law*

Mr. Contreras Rodriguez assigns error to the following two conclusions of law:

8

3.3     At the time Contreras Rodriguez possessed the vehicle he knew the vehicle was stolen[, and]

3.4     Contreras Rodriguez is guilty of the crime of Possession of a Stolen Vehicle.

CP at 59.

In its oral ruling finding Mr. Contreras Rodriguez guilty, the juvenile court identified two issues, the first being whether Mr. Contreras Rodriguez was driving the car at the time of the collision. It found that he was, based on where Mr. Contreras Rodriguez and Mr. Hernandez lay injured in relation to the car, the fact that neither was able to move, and that no other passengers were present. The locations of their respective injuries provide additional support for a finding that Mr. Contreras Rodriguez was the driver. Mr. Contreras Rodriguez does not assign error to the written findings associated with that issue or with the juvenile court's conclusions that he possessed a stolen vehicle on April 7, 2013. He argues only that his mere possession does not satisfy the State's burden on what the juvenile court identified as the second issue: whether he knew the car was stolen.

Turning to that second issue, the court recognized that the State's only evidence supporting knowledge was Mr. Contreras Rodriguez's statements made after the accident. It explained why it found that evidence sufficient:

> I went back over the notes. The statement that I thought was—the—one most favorable to the state is,—the officers arrive, and they ask, you know, who was driving the car, and he says, "I don't know."

9

> Difficult to understand—I mean, that's—that on the face of it seems pretty clearly to be a misrepresentation. Lucio—If we accept the proposition that Lucio was in the car—it's pretty clear by saying—he must have known who was driving, he's hiding something.

RP at 114-15.

Again, "[w]hen a person is found in possession of recently stolen property"—and the Civic was very recently stolen property—"slight corroborative evidence of other inculpatory circumstances tending to show his guilt will support a conviction." *State v. Portee*, 25 Wn.2d 246, 253-54, 170 P.2d 326 (1946), *overruled on other grounds by State v. Matuszewski*, 30 Wn. App. 714, 717-18, 637 P.2d 994 (1981). We defer to the reasonable inferences drawn by the trier of fact. *State v. Bryant*, 89 Wn. App. 857, 869, 950 P.2d 1004 (1998). The court's inference that Mr. Contreras Rodriguez was "hiding something" is a reasonable inference from the evidence, if not the only inference. An implausible response to a straightforward, material question is sufficient corroborative evidence to prove guilty knowledge.

Mr. Contreras Rodriguez nonetheless seizes on the juvenile court's subsequent comment that it considered but rejected the possibility that Mr. Contreras Rodriguez was "hiding something" to protect a friend. He argues that the court should have considered other possibilities including the one that we noted earlier—that Mr. Contreras Rodriguez didn't remember what happened before the accident. While that was another *logical* possibility, it was one that the juvenile court presumably considered and rejected in

10

finding, instead, that Mr. Contreras Rodriguez was hiding something. The juvenile court's task in entering findings is to document what it finds and the supporting evidence, it is not required to list and explain away every logical possibility that it rejected in arriving at a belief about what happened. As the court summarized, after explaining why it rejected the "protect a friend" possibility:

> I think the statement, you know, "I don't know who was driving the car"
> . . . is a very clear indication of the guilty state of mind. *While there may be other explanations I don't find them reasonable.*

RP at 115 (emphasis added).

Because the juvenile court's inference of knowledge was a reasonable one, sufficient evidence supports its conclusion that Mr. Contreras Rodriguez was guilty of possession of a stolen vehicle in violation of RCW 9A.56.068(1).

## II. Conditions of community supervision

Mr. Contreras Rodriguez's second assignment of error is that the juvenile court exceeded its statutory authority and abused its discretion when it imposed conditions of community supervision that were neither tailored to meet Mr. Contreras Rodriguez's specific needs nor related to the underlying offense. The State responds that any error is moot because the six months of supervision has concluded.

"An issue is moot if a court can no longer provide effective relief and if the issue presented is purely academic." *In re Marriage of T.*, 68 Wn. App. 329, 336, 842 P.2d 1010 (1993). Notwithstanding mootness, a court may consider an issue when it "discerns

11

a likelihood of recurrence of the same issue, generally in the framework of a 'continuing' or 'recurring' controversy, and 'public interest' in the controversy." *DeFunis v. Odegaard*, 84 Wn.2d 617, 627, 529 P.2d 438 (1974).

We cannot determine from the record the precise date on which Mr. Contreras Rodriguez's supervision concluded. The bench warrant issued in May 2014 stated that probation would be stayed pending a hearing on the violation, which we calculate resulted in a 51-day stay, with the result that supervision would conclude in the normal course on September 2, 2014 (51 days after the original July 13, 2014 termination). Even without knowing the precise timing, it is safe to say that the community supervision has concluded. Mr. Contreras Rodriguez does not argue otherwise by reply.

Because the issue is moot and does not present a recurring or continuing controversy that requires resolution, we will not consider it further.

### III. Scrivener's error

Finally, Mr. Contreras Rodriguez points out that the order on adjudication and disposition states that Mr. Contreras Rodriguez was convicted of count 1. But following the State's amendment of the information, the only count adjudicated was count 2: possession of a stolen vehicle. The State concedes the error.

We accept the State's concession. The order of adjudication and disposition should be amended to reflect the fact that Mr. Contreras Rodriguez was adjudicated guilty of count 2, not count 1.

No. 32195-9-III
*State v. Rodriguez*

We affirm the adjudication and remand for the sole purpose of correcting the scrivener's error.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, C.J.

WE CONCUR:

Korsmo, J.

Fearing, J.

13