FILED
COURT OF APPEALS
DIVISION II

2013 AUG 20 AM 8: 35

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42877-6-II |
| Respondent, | |
| v. | |
| DAVID WAYNE MAXWELL, | UNPUBLISHED OPINION |
| Appellant. | |

HUNT, P.J. — David Wayne Maxwell appeals his jury conviction for first degree trafficking in stolen property under RCW 9A.82.050. He argues that (1) the State improperly cross-examined him about facts underlying a prior conviction, (2) the trial court's limiting instruction addressing that conviction was inadequate, and (3) the evidence was insufficient to support his current conviction. We affirm.

## FACTS

Vigor Marine is a company that manufactures items for use in maintaining Navy vessels; it deals with large quantities of metal. At its Bremerton location on Ida Street, Vigor Marine's practice was to put scrap metal in an outside bin; when the bin was full, Vigor Marine would call Navy City Metals to pick up the scrap. Anyone seeking permission to take scrap metal was required to speak to warehouse manager Arthur Morken, who authorized only Navy City Metals to remove this scrap metal.

## I. THEFT OF COPPER-NICKEL PIPING

On March 3, 2011, Morken discovered that some copper-nickel piping was missing from the bed of a Vigor Marine truck in the company parking lot; this piping was to be used as a template for new piping. Morken found the missing piping, cut into smaller pieces, at Navy City Metals and called the sheriff's office. Vigor Marine's security video from shortly after midnight showed a vehicle pull up from which two men exited, took the piping from the Vigor Marine truck, put it in their own truck, and left. Morken had not given Navy City Metals permission to take this piping. Navy City Metals manager, Levi Taylor, produced receipts showing that he had purchased copper-nickel piping from David Maxwell on seven occasions, most recently on March 3 for $616. When the sheriff's office called Maxwell, he admitted having taken the copper piping from the Vigor Marine truck on March 3.

## II. PROCEDURE

The State charged Maxwell with seven counts of first degree trafficking in stolen property committed on different dates. The trial court granted the State's pretrial motion to admit Maxwell's 2010 conviction for second degree attempted burglary as a crime of dishonesty under ER 609, also ruling, however, that the underlying facts were not admissible unless Maxwell first opened the door with his testimony.

### A. State's Case

At the jury trial, Morken, Taylor, and two deputies from the Kitsap County Sheriff's Office testified to the above facts. Morken added that he never gave Maxwell permission to take any metal from Vigor Marine.

B. Defense Case: Maxwell's Testimony

On direct examination, Maxwell testified that (1) his own scrap metal business practice was to ask permission before taking scrap and to stop taking metal from a location when permission was withdrawn; (2) he had been taking scrap from the Ida Street location since 2005; (3) "a guy" whose name he did not know had given him permission to take metal from the dumpster but not from the yard; (4) he had never met Morken; and (5) he had told the deputies he had permission to take the scrap from the Ida Street location on March 3. 2 Verbatim Report of Proceedings (VRP) at 137.

On cross-examination, Maxwell again insisted that he never took metal from a business without permission. When the State then asked, "2010 you've never gone to any place to –," defense counsel objected, arguing that this question exceeded the scope of Maxwell's direct examination testimony. 2 VRP at 153. The State countered that the fair implication of Maxwell's direct examination testimony was that (1) he was always careful to make sure he had permission before taking metal; and (2) thus, the State was entitled to explore the facts underlying his 2010 conviction, which involved attempting to take metal without permission. Agreeing, the trial court overruled Maxwell's objection.

At Maxwell's request, the trial court conducted a short "voir dire," during which Maxwell testified that he had gone into a garbage dumpster in 2010 without permission to look for metal but did not find any. 2 VRP at 157. When cross-examination resumed, the State asked Maxwell if he had ever gone any place to take metal without permission; Maxwell answered, "Yes." 2 VRP at 159. Maxwell further testified that (1) the value of the piping he had taken from Vigor Marine's truck and had sold to Navy City Metals on March 3 was $616; (2) he was

supposed to take the scrap from the dumpster on Ida Street; and (3) even though he did not have permission to take the piping from the truck, he had taken it under the assumption that Vigor Marine had not yet gotten around to transferring the piping from the truck to the dumpster.

The trial court gave the jury a limiting instruction that it should consider the prior conviction not as evidence of Maxwell's guilt but only to assess his credibility. Maxwell neither objected to this instruction nor proposed alternative wording.

### C. Verdict and Sentence

The jury found Maxwell guilty of one count of first degree trafficking in stolen property, committed on March 3.[1] The trial court imposed a low-end standard range sentence of 22 months. Maxwell appeals his conviction.

### ANALYSIS

### I. SCOPE OF CROSS-EXAMINATION

Maxwell first contends that the trial court erroneously admitted propensity evidence, contrary to ER 404(b) and ER 609(a)(2), when it allowed the State to cross-examine him about the facts underlying his 2010 conviction for second degree attempted burglary. We disagree.

### A. Standard of Review

We review for abuse of discretion a trial court's decision about the proper scope of examination and the admissibility of evidence. *State v. Neal*, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001). The trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997).

---

[1] The jury acquitted Maxwell of the other six counts.

The trial court has discretion to admit evidence that might otherwise be inadmissible if the defendant opens the door to the evidence. *State v. Warren*, 134 Wn. App. 44, 64-65, 138 P.3d 1081 (2006), *aff'd on other grounds*, 165 Wn.2d 17, 195 P.3d 940 (2008). It is well settled that when a party opens up a subject of inquiry on direct examination, he contemplates that the rules will permit cross-examination within the scope of the direct examination. *State v. Gefeller*, 76 Wn.2d 449, 455, 458 P.2d 17 (1969). Similarly, when a defendant places his character in issue by testifying about his own past good behavior, the State may cross-examine him about specific acts of misconduct unrelated to the charged crime. *Warren*, 134 Wn. App. at 64-65; ER 404(a)(1). We hold that the trial court did not abuse its discretion here.

### B. Maxwell's Opening the Door to Past Behavior

The trial court initially admitted the fact of Maxwell's 2010 conviction solely as a crime of dishonesty under ER 609(a)(2). In doing so, the court ruled that the State could not explore the facts underlying that conviction unless Maxwell opened the door to such exploration.

On direct examination at trial, Maxwell testified that his practice was to ask permission before taking scrap metal and that he would stop taking metal from a location once permission was withdrawn. The trial court concluded that "the inference . . . from [this] testimony" was that Maxwell "is always very careful not to take metal without the permission of the owner of the metal," thus opening the door to cross-examination about his 2010 burglary attempt in which he had admittedly attempted to take scrap metal *without* the owner's permission. 2 VRP at 156. The trial court overruled Maxwell's objection that the State's question about the facts underlying Maxwell's 2010 conviction exceeded the scope of his direct testimony.

Because Maxwell did not object at trial to the State's cross-examination on ER 404(b) grounds, we will not address this argument for the first time on appeal. *See State v. Boast*, 87 Wn.2d 447, 451, 553 P.2d 1322 (1976) (party may assign error in appellate court only on specific ground of evidentiary objection made at trial).[2] And because during Maxwell's direct examination he opened the door to the issue of whether he always sought permission before removing scrap metal from another's property, we hold that the trial court did not abuse its discretion in allowing the State to cross-examine Maxwell about whether he had gone anywhere in 2010 to take metal without permission.

## II. SUFFICIENCY OF THE EVIDENCE

Maxwell also argues that the State failed to prove the essential elements of criminal profiteering as well as the knowledge element of first degree trafficking in stolen property. Again, we disagree.

Due process requires the State to prove each element of the offense charged beyond a reasonable doubt. *State v. Warren*, 165 Wn.2d 17, 26, 195 P.3d 940 (2008). The State charged

---

[2] Similarly, we do not consider Maxwell's fleeting argument that the trial court's limiting instruction was inadequate under the circumstances. Maxwell similarly failed to preserve this issue by failing to object to this limiting instruction below and by failing to request a differently worded instruction. *State v. Fitzgerald*, 39 Wn. App. 652, 662, 694 P.2d 1117 (1985).

Maxwell with first degree trafficking in stolen property, a crime included within the Criminal Profiteering Act, chapter 9A.82 RCW. This Act defines "criminal profiteering" as acts committed for financial gain that are chargeable as one of the predicate felonies enumerated in RCW 9A.82.010(4).[3] *State v. Munson*, 120 Wn. App. 103, 106, 83 P.3d 1057 (2004).

A. Criminal Profiteering and Stolen Property Value Not Elements of Trafficking

Maxwell argues that the predicate crime at issue is theft, which here amounted to only third degree theft, a gross misdemeanor, because (1) the property he was convicted of taking was worth only $616, and (2) to reach the felony level of theft the State would have had to have proved that he stole property worth more than $750.[4] Maxwell contends that because third degree theft is not a felony, it cannot be a predicate crime for criminal profiteering and, therefore, his conviction must be reversed. This argument fails.

---

[3] The legislature amended this statute in 2012 and 2013. LAWS OF 2012, ch. 139, § 1; LAWS OF 2013, ch. 302, § 10. These amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

[4] *See* RCW 9A.56.050 (defining third degree theft, a gross misdemeanor, as the theft of property valued at $750 or less).

Maxwell's argument is based on a fundamental misunderstanding of the crime of first degree trafficking in stolen property, of which criminal profiteering[5] is not an element. The value of the property is not an element of trafficking in stolen property.[6] *See State v. Strohm*, 75 Wn. App. 301, 311, 879 P.2d 962 (1994) (evidence that defendant rebuilt his own truck using stolen parts that he paid another to steal was sufficient to support charge of trafficking in stolen property). To prove that Maxwell trafficked in stolen property, the State had to prove only that he knew the property he sold was stolen and that he transferred this stolen property to another.[7] RCW 9A.82.050(1); *State v. Killingsworth*, 166 Wn. App. 283, 287, 269 P.3d 1064, *review*

---

[5] *See* RCW 9A.82.010(4):

"Criminal profiteering" means any act, including any anticipatory or completed offense, committed for financial gain, that is chargeable or indictable under the laws of the state in which the act occurred and, if the act occurred in a state other than this state, would be chargeable or indictable under the laws of this state had the act occurred in this state and punishable as a felony and by imprisonment for more than one year, regardless of whether the act is charged or indicted, as any of the following:

[. . .]

(e) Theft, as defined in RCW 9A.56.030, 9A.56.040, 9A.56.060, 9A.56.080, and 9A.56.083[.]

Although not an element of trafficking in stolen property, criminal profiteering is an element of leading organized crime, a separate offense, also included within the Criminal Profiteering Act. RCW 9A.82.060.

[6] In enacting the trafficking statute, the legislature intended to prohibit *any* commercial transaction involving property known to be stolen. *State v. Hermann*, 138 Wn. App. 596, 604, 158 P.3d 96 (2007); *see also State v. Michielli*, 132 Wn.2d 229, 236, 937 P.2d 587 (1997) (defendant knowingly trafficked in stolen property because, knowing certain items were stolen, he sold them to pawnshops).

[7] The Act defines "stolen property" as property that has been obtained by theft, robbery or extortion. RCW 9A.82.010(16). "Traffic" means "to sell, transfer, distribute, dispense, or otherwise dispose of stolen property to another person[.]" RCW 9A.82.010(19).

*denied*, 174 Wn.2d 1007 (2012). Thus, we reject Maxwell's sufficiency argument based on the failure to prove the elements of criminal profiteering.

### B. "Knowing" Action

Maxwell also contends that the evidence was insufficient to prove that he acted "knowingly" for purposes of proving first degree trafficking in stolen property. This argument also fails.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

The trial court instructed the jury that "knowingly" means to have "information that would lead a reasonable person in the same situation to believe that a fact exists." Clerk's Papers at 41 (Instruction 10). The evidence shows that Maxwell took copper-nickel piping from the bed of a truck at Vigor Marine shortly after midnight and sold it later that same day, March 3, 2011, knowing that he did not have permission to take the metal. Viewed in the light most favorable to the State, this evidence is sufficient to prove the knowledge element of first degree trafficking in

No. 42877-6-II

stolen property. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, P.J.

We concur:

Penoyar, J.

Bjorgen, J.

10