IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31847-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANATOLIY MELNIK, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Anatoliy Melnik appeals his convictions on two counts of first

degree trafficking in stolen property, alleging that the evidence was insufficient and that

the court erred in giving an instruction describing the process for claiming lost property.

We affirm.

FACTS

Tiffany Glassick's home was burglarized while she was at church on January 13,

2013. A television, numerous small jewelry items including an engagement ring with a

very large diamond, three bottles of perfume, and a portable hard drive were missing.

Within 24 hours, Mr. Melnik appeared at a Money Tree store and offered to sell several

gold jewelry items including a ring with a large diamond. When told that the store would

only purchase gold, but not precious stones, Mr. Melnik removed the diamond and sold

the band along with the other gold jewelry to Money Tree.

Mr. Melnik was arrested after he attempted to sell a large diamond to a pawn shop two days after the jewelry sale. Suspicious, the pawn shop retained the diamond and notified police. Officers obtained a search warrant for Mr. Melnik's residence and recovered two bottles of perfume from his residence. The perfume matched the popular brands stolen from Ms. Glassick.

The prosecutor charged one count of trafficking in stolen property for each sale. Ms. Glassick identified the gold sold to Money Tree and the diamond sold to the pawn shop as items stolen from her. Mr. Melnik did not testify at trial, but the prosecutor called a detective to testify to the contents of a recorded jail telephone conversation between Mr. Melnik and a woman named Brooke. In that conversation, Mr. Melnick claimed to have found the jewelry near a bridge in a Pasco park.

The prosecutor proposed a jury instruction describing Washington's civil procedure for claiming found property. The defense did not object and the court gave the instruction. Defense counsel argued to the jury that Mr. Melnik did not know the jewelry was stolen and pointed to the detective's testimony concerning the jail telephone recording as the only evidence of how the jewelry came into Mr. Melnik's possession. He also discounted the found property instruction on the basis that it did not apply to Ms. Glassick's obviously stolen property. The prosecutor briefly mentioned the instruction in both of her arguments.

The jury convicted Mr. Melnik as charged. Based on an offender score of 10, the court imposed an exceptional sentence consisting of concurrent 100-month sentences. Mr. Melnik then timely appealed to this court.

ANALYSIS

Mr. Melnik contends that the found property instruction improperly shifted the burden of proof in this case and that the evidence does not support the jury's determination that he knew the property was stolen. He also filed a pro se statement of additional grounds (SAG). We address those contentions in the noted order.

*Jury Instruction*

Mr. Melnik contends that the found property instruction put the burden on him to establish a right to the property and therefore shifted the burden from the State to prove he knew the property was stolen. We disagree.

"Jury instructions, taken in their entirety, must inform the jury that the State bears the burden of proving every essential element of a criminal offense beyond a reasonable doubt." *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995). An instruction that relieved the State of its burden would constitute reversible error. *Id.* This type of challenge is reviewed de novo "in the context of the instructions as a whole." *Id.*

As instructed in this case, the jury was required to determine whether the State had proved beyond a reasonable doubt that Mr. Melnik "knowingly trafficked in stolen

3

property." Clerks' Papers (CP) at 46, 47 (Instructions 6, 7). In turn, "knowingly" was

defined as being aware of a fact or circumstance. CP at 48 (Instruction 8).

The instruction at issue was number 14. It provided:

(1) Any person who finds property that is not unlawful to possess, the owner of which is unknown, and who wishes to claim the found property, shall:
(a) Within seven days of the finding acquire a signed statement setting forth an appraisal of the current market value of the property prepared by a qualified person engaged in buying or selling like items or by a district court judge, unless the found property is cash; and
(b) Within seven days report the find of property and surrender, if requested, the property and a copy of the evidence of the value of the property to the chief law enforcement officer, or his or her designated representative, of the governmental entity where the property was found, and serve written notice upon the officer of the finder's intent to claim the property if the owner does not make out his or her right to it under the appropriate RCW.
(2) Within thirty days of the report the governmental entity shall cause notice of the finding to be published at least once a week for two successive weeks in a newspaper of general circulation in the county where the property was found, unless the appraised value of the property is less than the cost of publishing notice. If the value is less than the cost of publishing notice, the governmental entity may cause notice to be posted or published in other media or formats that do not incur expense to the governmental entity.

CP at 54.

Viewed "in the context of the instructions as a whole," this instruction did not

impermissibly shift the burden of proof in this case. The elements instructions each told

the jury that the State was required to prove that Mr. Melnik knowingly trafficked in

stolen property. Nothing in instruction 14 changed that burden. It described the process

for a person to file a claim for found property, but the instruction did not indicate that Mr.

4

Melnik or anyone else was required to invoke the process simply because they found property. It likewise did not change the definition of knowledge.

The State's burden remained as described in instructions 6 and 7. While the relevancy of instruction 14 can be questioned, it did not impermissibly shift the burden of proof. This contention is without merit.

*Sufficiency of the Evidence*

Mr. Melnik also argues that the evidence did not support the jury's determination that he knew the property was stolen. Properly viewed, the evidence allowed the jury to make that determination.

Well settled standards govern appellate challenges to the sufficiency of the evidence to support a conviction. We review such challenges to see if there was evidence from which the trier of fact could find each element of the offense proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). The reviewing court will consider the evidence in a light most favorable to the prosecution. *Id.* Reviewing courts also must defer to the trier of fact "on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). "Credibility determinations are for the trier of fact and are not subject to review." *Id.* at 874.

Mr. Melnik argues that the only evidence of knowledge is his own statement that he found the property. We disagree. Not only did the jury not have to credit that story, the evidence of Mr. Melnik's actions allowed an entirely different view of the facts. It has long been the law of this state that possession of recently stolen property, coupled with some slight corroborating evidence, is sufficient to establish knowledge. *E.g., State v. Couet*, 71 Wn.2d 773, 775, 430 P.2d 974 (1967); *State v. Portee*, 25 Wn.2d 246, 253-54, 170 P.2d 326 (1946); *State v. Salzman*, 186 Wash. 44, 47, 56 P.2d 1005 (1936); *State v. Rockett*, 6 Wn. App. 399, 402-03, 493 P.2d 321 (1972).

The evidence showed that Mr. Melnik, whose residence contained two perfume bottles similar to those stolen from the victim, was in possession of the stolen jewelry within 24 hours of its taking from Ms. Glassick. That evidence of possession of recently stolen property was corroborated by his unlikely story, repeated efforts to rapidly sell the jewelry for discounted rates, and an inconsistent statement to the Money Tree employee that he was trying to settle a bet over whether the diamond was real or not. These were not the actions of an actual or innocent owner, but could easily be construed by the jury as the actions of a man with guilty knowledge that he possessed stolen property that needed to be disposed of in a hurry.

The evidence was sufficient to support the jury's determination that Mr. Melnik, whether or not he stole the property himself, knew it was stolen when he trafficked in the stolen property.

6

*Statement of Additional Grounds (SAG)*

In his SAG, Mr. Melnik argues that his exceptional sentence was improper, the prosecutor committed misconduct, and his counsel performed ineffectively. We again disagree with his arguments.

Mr. Melnik asserts that the exceptional sentence was improperly imposed in the absence of a jury finding of the aggravating factor. He is incorrect. The United States Supreme Court allows judges to decide questions of law that affect sentencing ranges. *See generally State v. Mutch*, 171 Wn.2d 646, 656-59, 254 P.3d 803 (2011); *State v. Alvarado*, 164 Wn.2d 556, 563-69, 192 P.3d 345 (2008). Here, the offender score was 10 points for each offense. Since the sentencing ranges stop when an offender reaches nine points, the extra offense in this case would go unpunished under the standard range. *Id.* Accordingly, the trial judge had authority to impose an exceptional sentence because the second count was otherwise a "free" crime without penalty. *Id.* There was no error.

Mr. Melnik also argues that the prosecutor committed misconduct in closing argument, isolating seven sentences from the prosecutor's closing remarks, none of which were challenged at trial. He does not persuasively argue that any error occurred. RAP 10.10(c). He also fails to show that he was so prejudiced by the claimed errors that a timely objection could not have cured it. To prevail on this claim, he needed to do both. *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008). This claim, too, fails.

7

No. 31847-8-III
*State v. Melnik*

Finally, Mr. Melnik contends his attorney rendered ineffective assistance by not objecting to the prosecutor's closing argument. To prevail on this claim, Mr. Melnik also needed to show that his counsel failed to perform to the standards of the profession and that significant prejudice therefore resulted. *Strickland v. Washington*, 466 U.S. 668, 690-92, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). As we have already determined that the challenged statements were not erroneous, this argument fails to meet the first prong of the *Strickland* test. Since he had to satisfy both prongs of *Strickland*, this argument, too, is unavailing. *Id.* at 692.

The issues presented by the SAG are without merit. Accordingly, the convictions are affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Fearing, J.

8